IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ERIE INSURANCE PROPERTY & CASUALTY
COMPANY,

        Petitioner,

v.              CIVIL ACTION NO. 2:10-cv-00479

SAMANTHA JONES, et al.,

        Respondents.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the petitioner's Motion for Summary Judgment [Docket 31]. For the reasons provided below, the motion is **GRANTED**.

**I. Background**

*a. Facts*

This matter arises out of the events that unfolded on the night of September 12, 2009, culminating in the tragic death of Charleston Police Officer Jerry Jones. On that evening, Charleston Police Officer Owen Morris responded to the scene of a car accident in Charleston, West Virginia. Upon his arrival at the scene, Officer Morris learned that "Brian Good [had] 'intentionally side-swiped' and then 'rammed' his vehicle into a vehicle which was occupied by an ex-girlfriend[,]" and then fled the scene. (Agreed Stipulation of Facts [Docket 31-1] ¶ 1.) Unaware of this incident, Charleston Police Officer Duane Fields subsequently attempted a traffic stop of Brian Good's vehicle for malfunctioning taillights. Good fled again. At first, Officer Fields received instructions not to follow Good. Officer Morris, however, informed his superiors that the vehicle with the

malfunctioning taillights "was the same vehicle involved in the prior hit and run [to which he, Officer Morris, had responded]." (*Id.* ¶ 3.) With permission, both Officer Morris and Officer Fields followed Good's vehicle until they lost sight of it and terminated pursuit.

Roughly three hours later, Charleston Police officers again spotted Good's vehicle after it collided with yet another vehicle. An officer attempted a traffic stop, but Good continued to evade the police. Officers, including Officer Jones, Officer Morris and Cpl. Travis Hawley, began to pursue Good. As the officers followed Good, Good's passenger, Natasha Light, threw items out of the window in front of the officers' cars. Good eventually pulled onto a gravel area off of Quick Road in Kanawha County, West Virginia, where he then turned his vehicle to face the oncoming police vehicles. Still in his truck, Good proceeded to "collide[] with . . . Car 103, the patrol car driven by Officer Morris." (*Id.* ¶ 6.) Cpl. Hawley reacted by "attempt[ing] to 'match bumpers with [Good] to keep him from shoving car 103 [Officer Morris' patrol car] . . . over the hill or in a ditch.'" (*Id.* ¶ 11.) As Cpl. Hawley maneuvered his vehicle, Officer Morris exited his car and ended up between his own vehicle and Cpl. Hawley's vehicle. Good continued to rev his engine, attempting to drive into the officers' vehicles, and Officer Morris feared he would get crushed. Meanwhile, Officer Jones parked his car behind Good's vehicle. Officer Jones then exited his vehicle and approached the "passenger side of Good's vehicle." (*Id.* ¶ 13.) Officer Burford, who had also arrived on the scene, exited his vehicle and was approaching the driver's side of Good's vehicle, directly across from Officer Jones. Officer Burford had his weapon drawn. Despite multiple police demands that Good stop the truck, Good continued to accelerate into Officer Morris's and Cpl. Hawley's vehicles and toward Officer Morris. As a result, the officers

surrounding Good's vehicle began to fire. Unfortunately, one of these bullets hit and fatally wounded Officer Jones.

*b. Procedural History*

As a result of the incidents described above, Samantha Jones, the Administratrix of the Estate of Officer Jones, filed a wrongful death lawsuit in the Circuit Court of Kanawha County, West Virginia, against Patricia Harrison, as Administratrix of the Estate of Brian Good, and Natasha Light, Good's passenger in the vehicle. Good's automotive insurance carrier settled with Samantha Jones. In addition, Ms. Jones sought underinsured motorists ("UIM") coverage under Policy No. Q01-6905393 that Erie Insurance Property & Casualty Company ("Erie") had issued to Jerry and Samantha Jones.

In response to the claim for UIM coverage, Erie filed the instant diversity action seeking a declaratory judgment that the UIM claim is not covered under the Jones' policy. On February 7, 2011, Erie filed a Motion for Summary Judgment [Docket 31]. First, Erie argues that Officer Jones's injuries did not result from a motor vehicle accident or arise out of the use or ownership of an underinsured motor vehicle. Second, Erie points to two specific policy exclusions, including one that precludes coverage for bodily injuries resulting from the accidental or intentional use of any weapon. According to Erie, the respondents cannot recover under the plain terms of the policy. The parties have fully briefed the summary judgment motion and the matter is now ripe for review.

## II.    Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and

determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

In this case, the parties have stipulated to the material facts. Moreover, the question of coverage under an insurance contract is a question of law for the court to decide. *See Tennant v. Smallwood*, 568 S.E.2d 10, 13 (W. Va. 2002).[1] When the parties have stipulated to all of the material facts and all that remains is a legal dispute, the case is ripe for summary disposition. *See Nationwide Mut. Ins. Co. v. Shumate*, 63 F. Supp. 2d 745, 746 (S.D. W. Va. 1999).

## III.  Discussion

The court begins its analysis of an insurance coverage dispute with the terms of the insurance policy, which are to be given their plain, ordinary meaning. *See Mylan Labs. Inc. v. Am. Motorists Ins. Co.*, 700 S.E.2d 518, 524 (W. Va. 2010). When those terms are "clear and unambiguous, they are not subject to judicial construction or interpretation." *Id.* (internal quotation marks omitted). Rather, full effect will be given to their plain meaning. *See id.*

The Jones' policy with Erie contains an endorsement providing for UIM coverage. According to the terms of the endorsement, Erie agreed to pay damages for bodily injury and property damage "that the law entitles 'anyone we protect' or the legal representative of 'anyone we protect' from the owner or operator of an 'underinsured motor vehicle.'" (Erie's Mot. Summ. J. Ex. 4 [Docket 31-4], at 23.) The endorsement further provides that the "[d]amages must result from a

---

[1] West Virginia's substantive law applies to this diversity action. *See Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 66 (1938)).

motor vehicle accident *arising out of the ownership or use* of the . . . 'underinsured motor vehicle' as a motor vehicle." (*Id.* (emphasis added).) Moreover, the endorsement excludes coverage for "bodily injury sustained by 'anyone we protect' resulting from the accidental or intentional use of any weapon." (*Id.*)

Accordingly, the policy's UIM coverage is limited to injuries "arising out of the ownership or use" of an underinsured motor vehicle. Erie maintains that this phrase connotes a certain causal relationship between the injury and the underinsured motor vehicle that is absent in this case. The respondents agree that some casual connection is required, but disagree as to the degree of a connection. In the respondents' view, they need only demonstrate "some nexus" between the use of the underinsured motor vehicle and the injury. West Virginia's courts have previously interpreted the phrase "arising out of the use of a motor vehicle." *See Baber v. Fortner*, 412 S.E.2d 814, 818 (W. Va. 1991). The phrase means that the "causal connection must be more than incidental, fortuitous or but for. The injury must be forseeably identifiable with the normal use of the vehicle." *Id.* (internal quotation marks and emphasis omitted).[2] Thus, "[t]he mere fact that an actual nexus links the use of the vehicle to an accident does not mean that such use was 'normal[.]'" *Watkins v. Continental Cas. Co.*, 991 F.2d 793, 1993 WL 127950, at *2 (4th Cir. 1993) (unpublished).

In *Baber*, the Supreme Court of Appeals rejected coverage under the "arises out of" language for an injury that resulted from an intentional shooting from the cab of a pickup truck. *See* 412 S.E.2d at 819. The party seeking coverage argued for a "but for" causal relationship, contending that "but for" the operation of the truck, the shooting may not have occurred. *Id.* The Supreme

---

[2] Although not emphasized by the parties, the policy language at issue in this case contains an additional phrase that reinforces the concept that the normal use of a vehicle is important. Namely, the injuries must arise from the "ownership or use of the 'underinsured motor vehicle' *as a motor vehicle*."

-5-

Court required a closer causal relationship, however, concluding that the driver's shooting "was not 'foreseeably identifiable with the normal use of the vehicle.'" *Id.* ("[W]e conclude that an intentional shooting which occurs within the cab of a stationary pickup is not an act arising out of the ownership, maintenance, or use of the vehicle."); *see also Nationwide Mut. Ins. Co. v. Shumate*, 63 F. Supp. 2d 745, 747 (S.D. W. Va. 1999) (concluding that injuries resulting from a post-collision altercation with an angry uninsured motorist were not "foreseeably identifiable with the normal use of a vehicle"). In short, the party seeking coverage must demonstrate more than "some nexus" between the ownership or use of the motor vehicle and the injury sustained.

In this case, Officer Jones's death did not arise out of the ownership or use of the underinsured motor vehicle. As the parties have stipulated, the bodily injury to Officer Jones was caused by a gunshot wound inflicted by a fellow officer. The officers fired on the vehicle after Brian Good began using his truck as a weapon to repeatedly ram the other officers' vehicles. Good's use of the truck was not within the ordinary, customary, or normal use of a motor vehicle. Additionally, the police officers' firing of their weapons in response to Good's unusual use of the truck was not a natural or reasonable consequence of the use of a motor vehicle. In short, Officer Jones's injuries were not foreseeably identifiable with the normal use of a vehicle. In fact, to extend UIM coverage to the circumstances here would require an additional logical step beyond the facts presented in *Baber* and *Shumate*. In those cases, the injuries were inflicted by an operator or occupant of the vehicle in question. Here, however, it was a third party (a fellow officer), and not an operator or occupant of the underinsured motor vehicle, that inflicted the injury on Officer Jones.

Even if I were to conclude that the injuries arose out of the ownership or use of Good's vehicle, I note that an exclusion to the UIM endorsement in the policy applies. Exclusion No. 8

declines coverage for "bodily injury sustained by 'anyone we protect' resulting from the accidental or intentional use of any weapon." (Erie's Mot. Summ. J. Ex. 4 [Docket 31-4], at 23.)[3] In this case, the parties have stipulated that the sole injury causing Officer Jones's death was the gunshot wound. Under West Virginia law, UIM exclusions that comport with the spirit and intent of the statute are valid and enforceable. *Deel v. Sweeney*, 383 S.E.2d 92, 95 (W. Va. 1989); *Adkins v. Meador*, 494 S.E.2d 915, 920 (W. Va. 1997). The basic purpose of the UIM statute is to provide optional coverage "against losses occasioned by the negligence of other drivers who are underinsured." *Deel*, 383 S.E.2d at 95. The respondents have not explained how precluding UIM coverage for injuries resulting from weapons would run afoul of the spirit and intent of the statute. Under the plain language of the exclusion, therefore, UIM coverage is precluded. Because the plain terms of the policy do not provide for UIM coverage under the facts presented, Erie is entitled to summary judgment.[4]

### IV. Conclusion

Based on the foregoing reasons, Erie's Motion for Summary Judgment [Docket 31] is **GRANTED**. The court further **DENIES** the respondents Leave to File Surreply Memorandum in Opposition to Petitioner's Reply to Respondent's Response to Summary Judgment [Docket 42].

---

[3] The respondents argue that since Good did not shoot the weapon, the exclusion is inapplicable. Under the plain language of the Exclusion, who shot the weapon is irrelevant.

[4] The respondents have requested Leave to File Surreply Memorandum in Opposition to Petitioner's Reply to Respondent's Response to Summary Judgment [Docket 42] in order to provide this court with a partial summary judgment order entered on April 21, 2011, in the Circuit Court of Kanawha County, West Virginia, in the underlying tort action. Whether Brian Good is liable in tort is inapposite to the proper interpretation of the insurance policy before this court. Therefore, the respondents' motion is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

          ENTER:     May 6, 2011

          Joseph R. Goodwin, Chief Judge